IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES T. BRUNO,

      Plaintiff,

v.                                                                    Civil Action No. 3:13-CV-00840-REP
                                                                      (Removed from the City of Richmond
J.C.PENNEY,                                                           General District Court, No. GV13-040724)

      Defendant.

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS, OR IN THE ALTERNATIVE,
<u>MOTION FOR SUMMARY JUDGMENT</u>**

      Defendant Synchrony Bank, formerly known as GE Capital Retail Bank, erroneously

named as "J.C. Penney" (the "Bank"), by counsel, pursuant to Rules 12(b)(6) and 56 of the

Federal Rules of Civil Procedure, and Local Civil Rule 56(B), and for its memorandum in

support of the Bank's Motion to Dismiss the claims asserted against it in the Amended

Complaint[1] filed by James T. Bruno ("Bruno"), or in the alternative, Motion for Summary

Judgment in favor of the Bank, states as follows.

## <u>INTRODUCTION</u>

      Bruno initiated this action against the Bank by filing his Warrant in Debt in the General

District Court for the City of Richmond, Virginia, contending that the Bank violated the

Servicemembers Civil Relief Act, 50 U.S.C. App. § 501 *et seq.*("SCRA").  *See* Warrant in Debt,

attached as Exhibit 1 to the Bank's Notice of Removal (ECF No. 1).  The Warrant in Debt

against the Bank was one of at least eight similar filings by Bruno against numerous creditors

---

[1] Bruno's Amended Complaint was filed as ECF No. 13, and documents that appear to be
intended as exhibits to the Amended Complaint were filed as ECF Nos. 14, 15, and 16.
References to paragraphs of the Amended Complaint mean the document filed by Bruno's
counsel as ECF No. 13.  The exhibits to the Amended Complaint are identified herein by ECF
number and page number of the electronically-filed document.

relating Bruno's various debts.  *See* "Online Case Information: Richmond General District/Civil, Civil Search By Name: James Bruno," *available at* http://epwsgdp1.courts.state.va.us/gdcourts/nameSearch.do; *see also James Bruno v. Bank of America*, Civil Action No. 3:14-cv-113-REP (E.D.Va.); *James T. Bruno v. Walmart*, Civil Action No. 3:13-cv-00841-REP (E.D.Va.).  Bruno concedes he has filed numerous lawsuits against his various creditors all in a transparent attempt to obtain nuisance value settlement payments from the various entities Bruno has chosen to sue.  *See* Motion for Continuance, (ECF No. 7) (seeking a continuance of the then-remaining cases he filed because "[Bruno] expected the lawyers representing all these cases to settle").

Bruno's Amended Complaint alleges in conclusory fashion that the Bank violated the SCRA based only on falsely alleged negative reporting his J.C. Penney credit card account ending 5231 (the "JCP Account"), the Bank's decline of his request for increased credit on his JCP Account, and the Bank's closure of the JCP Account.  In fact, Bruno never exercised any rights under the SCRA with respect to the JCP Account.  The Bank never negatively reported the JCP Account to any credit bureau.  Nonetheless, even if Bruno's allegations were true, they still do not support a claim against the Bank under the SCRA.

Bruno has failed to allege any facts tending to support his claim that the Bank is liable to him for a purported violation of any portion of the SCRA.   For example, the documents Bruno chose to append to his Amended Complaint (*see* ECF Nos. 13-16) establish that the negative reporting on his credit report involved accounts other than the JCP Account at issue.  Bruno never used the JCP Account, no fees or charges were ever assessed on the JCP Account, and Bruno never exercised any rights arising under the SCRA.  Indeed, Bruno's own exhibits establish that his JCP Account was closed after his discharge from the military.  The Bank

simply is not liable to Bruno under the SCRA.  As made clear by the public records and the reasonable inferences from Bruno's Amended Complaint, Bruno cannot state a claim against the Bank for violation of the SCRA.

## BACKGROUND

In his Warrant in Debt, Bruno, *pro se*, sought $20,000 in damages against "J.C. Penney"[2] for "soldier sailor civil relief act violations."  ECF No. 1, at Exhibit 1.  The Bank removed the matter to this Court on December 19, 2013, within 30 days of receiving the Warrant in Debt.  On December 20, 2013, the Bank filed a motion for a more definite statement (*see* ECF Nos. 3 and 4), and Bruno responded by filing a motion for continuance on January 23, 2014 (ECF No. 7). On March 12, 2014, the Court granted the Bank's motion, denied Bruno's first request for a continuance as moot, and directed Bruno to file his amended complaint by April 30, 2014.  ECF No. 10.  On April 29, 2014, Bruno sought another continuance (ECF No. 11), which the Court promptly granted (ECF No. 12).  In the recently-filed Amended Complaint, Bruno argues that he is entitled to relief from the Bank under the SCRA in the form of monetary damages and injunctive relief relating to [nonexistent] derogatory credit reporting on his JCP Account.

Despite now being represented by counsel, Bruno's Amended Complaint against the Bank continues to have no basis in law or fact.  Accordingly, the Bank brings its present Motion to Dismiss the Amended Complaint for failure to state a claim, or in the alternative for entry of Summary Judgment against Bruno in favor of the Bank on all claims.

---

[2] Bruno's claims relate to a J.C. Penney consumer credit card account owned and serviced the Bank.  Accordingly, the Bank, not J.C. Penney, is the proper party to this action.

## UNDISPUTED MATERIAL FACTS

1.      On or about June 6, 2010, Bruno applied for the J.C. Penney Account ending 5231.  The JCP Account was opened on or about July 5, 2010.  *See* Amended Complaint, ¶ 4; Declaration of Martha Koehler, ¶¶ 3, 7 attached hereto as **Exhibit 1** ("Koehler Declaration").

2.      The Bank owns and services the JCP Account.  Koehler Declaration, ¶ 6.

3.      Bruno never made any charges on the JCP Account, nor did he otherwise use the JCP Account.  Koehler Declaration, ¶ 12; *see also* ECF No. 15, p. 6 (showing $0 balance).

4.      The Bank has never reported any derogatory information relating to the JCP Account to any credit reporting bureau.  Koehler Declaration, ¶ 13; *see also* ECF No. 15, p. 6 (showing JCP Account reporting with no derogatory information); ECF No. 16, p. 2 (same).

5.      Derogatory information on Bruno's credit report relates to accounts other than the JCP Account.  *See* ECF No. 16, pp. 1-2

6.      The only correspondence the Bank received from Bruno relating to the JCP Account was a letter dated "10 Dec 2009"—six months prior to Bruno's JCP Account application—that was received on October 9, 2010, in which Bruno requested a credit line increase.  Koehler Declaration, ¶¶ 8-9, and Exhibit A thereto.

7.      Bruno did not exercise any rights arising under the SCRA with respect to the JCP Account, including but not limited to requesting a reduction in the interest rate or for waiver of any fees or penalties on the JCP Account—nor could he because Bruno never used the JCP Account.  Koehler Declaration, ¶¶ 12-15.

8.      Bruno was scheduled to be discharged from the U.S. Army on September 1, 2012, but later had a medical retirement date of November 30, 2012.  *See* ECF No. 14, pp. 5-6, 12.

9.      The JCP Account was closed by the Bank on January 3, 2013, after Bruno was discharged from the U.S. Army.  Koehler Declaration, ¶ 14, Exhibit D; *see also* Amended Complaint, ¶ 5.

## STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the Court reviews the sufficiency of the complaint.  In order to survive such a motion, plaintiff's complaint must allege a plausible claim for relief.  The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotations marks omitted).  The Supreme Court of the United States has explained the application of this standard as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... Factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)) . . . .

*Twombly*, 550 U.S. at 561 (internal citations and footnote omitted).

*Twombly* marked the "retirement" of the language from *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 580-81 (citing *Conley*, 355 U.S. 41, 45-46 (1957)).  Instead, the Supreme Court directed that the mere possibility is insufficient; well-pled allegations must nudge the claim "across the line from conceivable to plausible" to survive a motion to dismiss.  *Twombly*, 550 U.S. at 570.  A "claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

The claim must be supported by "any set of facts consistent with the allegations in the complaint." *Kelley v. U.S.*, 580 F. Supp. 2d 490, 492 (E.D. Va. 2008) (quoting *Twombly*, 127 S. Ct. 1955, 1959). The Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take facts asserted therein as true. *Id.* The Court need not, however, accept the legal conclusions, inferences, or arguments that are drawn from the facts – and they may take judicial notice of matters outside the pleadings. *See Field v. Berman*, 526 Fed. App'x. 287, 289 (4th Cir. 2013) ("In addition to considering the complaint itself, we must consider any documents attached to the complaint as exhibits ... 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice'" (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007))); *see also Kelley*, 580 F. Supp. 2d at 492.

Summary judgment is appropriate when the pleadings and other matters before the court reveal that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Further, "[w]here the record taken as a whole could not lead a trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). A motion for summary judgment requires the non-moving party to produce evidence on any issue for which that party bears the burden of production at trial. *Celotex v. Cattrett*, 477 U.S. 317 (1986). Not only must the non-moving party present facts which raise an issue of fact, it must present evidence that is more than a mere scintilla and that shows more than

some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"Summary judgment is not a 'disfavored procedural shortcut.'" *White v. Potocska*, 589 F. Supp. 2d 631, 640 (E.D. Va. 2008) (internal citations omitted). "Rather, the summary judgment procedure is properly regarded as an 'integral part' of the Federal Rules of Civil Procedure, which are designed to obtain a just, expeditious, and inexpensive resolution of every civil matter." *Id.* When expert testimony is required to establish an element of a claim, summary judgment is appropriate if a party fails to produce reliable expert testimony on that element. *Id.* at 657 (granting summary judgment based on party's failure to obtain expert to opine on issues showing fraud); *Smith v. Gen. Motors Corp.*, 376 F. Supp. 2d 664 (W.D. Va. 2005) (granting summary judgment based on plaintiff's failure to produce competent expert testimony on an element of her claim); *Ruffin v. Shaw Indus., Inc.*, 149 F.3d 294 (4th Cir. 1998) (holding that grant of summary judgment was appropriate where expert testimony was inadmissible under *Daubert* and, without the expert's testimony, plaintiff could not establish a genuine issue of material fact). Similarly, summary judgment is appropriate where a party fails to proffer evidence on all elements of its claim. *Matarese v. Archstone Pentagon City*, 761 F. Supp. 2d 346, 362 (E.D. Va. 2011) (granting summary judgment – based on the lack of expert testimony – and holding that in "the absence of proof on all of the requisite statutory elements, Plaintiffs' claims against these Defendants must fail").

## ARGUMENT

### I.      Bruno Has Not Stated A Cognizable Claim Under The SCRA.

The SCRA does not prohibit the conduct Bruno complains of, and no portion of the SCRA provides Bruno a basis to recover the damages he seeks against the Bank. The SCRA is designed to protect members of the armed forces from certain civil claims and debt-collection

activities while on active duty, thereby "lessen[ing] the impact of reservists' absence on their civil life and obligations." *Newton v. Bank of McKenney*, Civil No. 3:11cv493-JAG, 2012 WL 1752407, at *4 (E.D.Va. May 16, 2012) (granting the bank's motion for summary judgment on all of plaintiffs' claims for money damages under the SCRA and on plaintiffs' request for a permanent injunction against any efforts by the Bank to collect on their guarantee of the loans at issue). The SCRA provides servicemembers specific substantive rights to satisfy this purpose. *See Koenig v. Waukesha State Bank*, No. 05-C-255, 2006 WL 2334841, *3 (E.D. Wis. Aug. 10, 2006) (granting the bank's motion for summary judgment on plaintiff's claims under §§ 518, 523, 527, 532, and 591 of the SCRA). For example, the SCRA provides that an:

> [a]pplication by a servicemember for, or receipt by a servicemember of, a stay, postponement, or suspension pursuant to this Act in the payment of a tax, fine, penalty, insurance premium, or other civil obligation or liability of that servicemember shall not itself . . . provide the basis for any of the following:
>
> > (1) A determination by a lender or other person that the servicemember is unable to pay the civil obligation or liability in accordance with its terms.
> >
> > ***
> >
> > (3) An adverse report relating to the creditworthiness of the servicemember or to a person engaged in the practice of assembling or evaluating consumer credit information.

50 U.S.C. App. § 518(1), (3).

The SCRA also limits the amount of interest on an obligation or liability incurred by a servicemember to six (6) percent per year during the period of military service and one year thereafter. 50 U.S.C. App. § 527(a)(1) (capping the interest a creditor may charge on "[a]n obligation or liability…incurred by a servicemember…before the servicemember enters military service" at not more than six percent). The interest rate cap is not automatic, but instead requires written notice to the creditor. 50 U.S.C. App. § 527(b)(1). Further, courts may grant creditors

relief from the six percent cap "if, in the opinion of the court, the ability of the service member to pay interest upon the obligation or liability at a rate in excess of 6 percent per year is not materially affected by reason of the servicemember's military service." 50 U.S.C. App. § 527(c). Although wholly inapplicable here, the SCRA also authorizes the Court to stay proceedings relating to liens on real or personal property, and to "adjust the obligation to preserve the interests of parties" in such an action filed during a servicemember's period of military service or nine (9) months thereafter. 50 U.S.C. App. § 533(b). This Court, however, should not consider any damages analysis because none of the provisions of the SCRA prohibit the conduct Bruno complains of, and no portion of the SCRA provides Bruno a basis to recover the damages he seeks. *See* 50 U.S.C. App. § 501, *et seq.*

Bruno's Amended Complaint is based on a misreading of the law. The SCRA does not cover his purported inability to pay certain of his debts during his time of service and continuing thereafter due to his alleged hospitalization in 2012. *See, e.g.*, Amended Complaint, ¶¶ 6, 10-12. In fact, the SCRA only *limits* debt-collection activities as specifically listed in its provisions. *See, e.g., Newton*, 2012 WL 1752407, at *1 (noting that "the SCRA does not allow the Court to completely forgive debt"); *see also Koenig*, 2006 WL 2334841, *6 (emphasizing that plaintiff's "relief is limited to the relief set forth in the [SCRA]"). Moreover, the SCRA does not require creditors to extend credit to servicemembers without regard to creditworthiness. *See generally* 50 U.S.C. App. § 501, *et seq.* The SCRA does not prohibit creditors from closing accounts of servicemembers except in very limited circumstances not present here. *Id.* at § 518(2). Bruno's claims against the Bank are based on conduct that the SCRA does not proscribe.

In his action against the Bank, it is unclear why Bruno refers to his alleged inability to pay his debts because Bruno never owed a debt on the JCP Account. He has not alleged that the

Bank attempted to collect a debt on his JCP Account from him.  *See generally* Amended

Complaint.  More generally, Bruno has been on notice for more than two years that the SCRA

does not permit him to cease making payments to his creditors.  *See* ECF No. 14 at p. 7 (March

5, 2012 letter from Bruno's commanding officer stating "If this soldier is legally delinquent and

has not paid any of his creditor's [*sic*] please be advised that the United States government will

ensure that this soldier pays your agency immediately.  If he is not making the appropriate

payment he will be reprimanded by his command.").

Bruno contends that he is entitled to recover damages from the Bank because the Bank

should have "ignored" his credit reports and should have "protected or restored" his "credit

account and credit scores."  Amended Complaint, ¶¶ 10-11.  As set forth in the plain language of

the statute, the SCRA only prohibits creditors from reducing credit limits or closing accounts

solely in retaliation for a servicemember's exercise of his or her rights under the SCRA:

> Application by a servicemember for, or receipt by a servicemember of, a stay,
> postponement, or suspension pursuant to this Act in the payment of a tax, fine,
> penalty, insurance premium, or other civil obligation or liability of that
> servicemember ***shall not itself*** . . . provide the basis for any of the following: (A)
> a denial or revocation of credit by the creditor; (B) a change in the terms of an
> existing credit arrangement; or (C) a refusal by the creditor to grant credit to the
> servicemember in substantially the amount or on substantially the terms
> requested.

50 U.S.C. App. § 518(2) (emphasis added).

There are no allegations that the JCP Account was closed solely because of Bruno's

alleged "application….for, or receipt…of, a stay, postponement, or suspension pursuant to this

Act in the payment of a tax, fine, penalty, insurance premium, or other civil obligation or

liability."  Bruno does not contend that the Bank committed any other alleged act or omission

that would potentially violate the SCRA, such as by assessing improper fees or interest after

written notice was provided by Bruno.  Moreover, Bruno's own exhibits defeat his claim against

the Bank based on the JCP Account.  *See* ECF No. 14, pp. 1-3 (letter from the Bank listing legitimate reasons for closing the JCP Account—none of which include any exercise of right under the SCRA).  Thus, Bruno fails to state a violation of the SCRA against the Bank for which relief may be granted and his Amended Complaint should be dismissed in accordance with Rule 12(b)(6).

Finally, assuming *arguendo* that closing Bruno's JCP Account was prohibited by the SCRA—and it was not—Bruno's claim still fails because the SCRA's limited protections do not apply in perpetuity.  "The purpose of this [Servicemember's Civil Relief] Act are…(2) to provide for **temporary suspension** of the judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers **during their service**."  50 U.S.C. App. § 502(2) (emphasis added).  Bruno admits that he was discharged from the U.S. Army on November 30, 2012.  ECF No. 14, p. 12 ("Effective date of retirement: 30 November 2012").  He appended to his pleading the JCP Account closure letter, which post-dated his discharge by more than two months.  ECF No. 14, pp. 1-3 (JCP Account closure letter dated January 3, 2013).  Thus, Bruno's Amended Complaint actually proves that the closure of the JCP Account could not violate the SCRA because it occurred after Bruno's military service ended.  Therefore, the Court need not look outside the pleadings to dismiss Bruno's claims with prejudice.

## II.    The Bank Is Entitled To Entry Of Summary Judgment In Its Favor.

Even if Bruno's Amended Complaint states a cognizable claim under the SCRA—which the Bank denies for the reasons discussed above—the Bank is entitled to summary judgment because Bruno cannot allege any facts to support his claims against the Bank.

It is undisputed that Bruno never made any charges on the JCP Account, nor did he otherwise use the JCP Account.  Koehler Declaration, ¶ 12; *see also* ECF No. 15, p. 6 (showing

$0 balance).  The Bank, therefore, has never reported any derogatory information relating to the JCP Account to any credit reporting bureau.  Koehler Declaration, ¶ 13; *see also* ECF No. 15, p. 6 (showing JCP Account reporting with no derogatory information); ECF No. 16, p. 2 (same).  Rather, any derogatory information on Bruno's credit report relates to accounts other than the JCP Account.  *See* ECF No. 16, pp. 1-2; *see also* ECF No. 14, p. 14 (handwritten listing of accounts purportedly reporting derogatory information, but not listing the JCP Account).

Additionally, it is undisputed that Bruno did not exercise any rights arising under the SCRA with respect to the JCP Account, including but not limited to requesting a reduction in the interest rate or for waiver of any fees or penalties on the JCP Account—nor could he because Bruno never used the JCP Account.  Koehler Declaration, ¶¶ 12-15.

Furthermore, Bruno admits that the JCP Account was closed by the Bank on January 3, 2013, after Bruno was discharged from the U.S. Army.  Koehler Declaration, ¶ 14, Exhibit D; *see also* Amended Complaint, ¶ 5.  As discussed above the SCRA's limited protections only apply during Bruno's period of service, which he concedes ended by November 30, 2012.  *See* ECF No. 14, pp. 5-6, 12; *see also* 50 U.S.C. App. § 502(2)

Accordingly, there are no material facts in dispute tending to support Bruno's contention that the Bank violated the SCRA.  To the contrary, the undisputed material facts show that the Bank is entitled to summary judgment.

## <u>CONCLUSION</u>

WHEREFORE, Defendant Synchrony Bank, formerly known as GE Capital Retail Bank, respectfully requests that this Court grant its Motion to Dismiss, and enter an Order dismissing Bruno's claims with prejudice.  In the alternative grant, the Bank respectfully requests that the Court grant its Motion for Summary Judgment and enter an order awarding judgment in its favor

and against Bruno on all claims.  Additionally, the Bank requests that the Court award it such

further relief as is just and proper.

Respectfully Submitted,

SYNCHRONY BANK f/k/a GE CAPITAL
RETAIL BANK

By Counsel

/s/ Alison R. W. Toepp
Alison R. W. Toepp (VSB No. 75564)
Reed Smith LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1700
Richmond, Virginia 23219
Telephone: (804) 344-3400
Facsimile: (804) 344-3410
atoepp@reedsmith.com

*Counsel for Synchrony Bank f/k/a GE Capital Retail Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July, 2014, a true and correct copy of the foregoing was filed via the Court's CM/ECF system, which will send notice to all registered users, including the following:

Neil Kuchinsky, Esq.
KUCHINSKY & YEAMANS, P.C.
200 Lakeview Avenue, Suite B
Colonial Heights, VA 23834

*Counsel for Plaintiff James T. Bruno*


/s/ Alison R. W. Toepp
Alison R. W. Toepp (VSB No. 75564)
Reed Smith LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1700
Richmond, Virginia 23219
Telephone: (804) 344-3400
Facsimile: (804) 344-3410
atoepp@reedsmith.com

*Counsel for Synchrony Bank f/k/a GE Capital Retail Bank*